ANGELO A. ZIOTAS v. THE REARDON LAW FIRM, P.C.
(AC 28260)

Flynn, C. J., and DiPentima and Dupont, Js.

288

Argued May 27—officially released November 25, 2008

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant-appellee (defendant).

*Anthony M. Fitzgerald*, for the appellee-appellant (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, The Reardon Law Firm, P.C., appeals from the judgment of the trial court rendered in favor of the plaintiff, Angelo A. Ziotas, a former associate of the defendant. The defendant claims that the court improperly (1) looked beyond the four corners of a written employment contract between the parties, (2) construed the written stipulation between the parties and (3) found that the defendant had breached the employment contract. The defendant further claims that the court improperly awarded offer of judgment interest because it had submitted to the plaintiff a conditional acceptance of the plaintiff's offer of judgment. The plaintiff has filed a cross appeal, claiming that the court improperly removed the second count of his third revised complaint, a statutory claim for wrongful withholding of wages. We agree with the plaintiff on all the issues raised and, accordingly, affirm in part and reverse in part the judgment of the trial court.

The defendant is a professional corporation in New London that is engaged in the practice of law. The defendant's practice is concentrated in the representation of plaintiffs in personal injury cases on a contingent fee basis. Robert I. Reardon is an attorney at law and the president of the defendant law firm, exercising all of the powers customarily exercised by a chairman, president and chief executive officer of a corporation.

The plaintiff has been a member of the Connecticut bar since December 5, 1991, and began working for the defendant as an associate on April 1, 1992. On February 10, 1993, the plaintiff and Reardon, on behalf of the defendant, executed a written contract setting forth the rights and responsibilities of the parties with respect to the plaintiff's employment. Reardon, on behalf of the defendant, drafted the contract and informed the plaintiff that his continued employment was contingent on his agreeing to its terms. Reardon afforded the plaintiff no opportunity to edit the terms of the contract.

Pursuant to the terms of the contract, the plaintiff was an employee at will of the defendant, subject to termination, with or without cause, at any time. Paragraph three of the contract further provided: "Annual compensation shall be subject to review by the Board of Directors of [the defendant] on the anniversary of employment of [t]he Associate. Compensation shall be based, in part, on the following criteria:

"a. Seniority in The Firm,

"b. Business generation,

"c. Business productivity,

"d. Quality of work/professional ability,

"e. Work profitability,

"f. Participation in professional activities and pro bono work,

"g. Noteworthy outside activities,

"h. Loyalty and commitment to [the defendant]."

The plaintiff's initial base salary was $35,000 per year, and, after his first nine months of employment, he received a bonus of $12,000. From 1993 through 1997, the amount of the plaintiff's base salary and bonuses increased annually. In 1997, the plaintiff received total

compensation in the amount of $117,600, which included a base salary of $62,600 and a bonus of $55,000. Reardon alone determined the amounts of the plaintiff's base salary and bonuses from year to year. Bonuses were paid only in December but were not calculated on the basis of any particular percentage of the defendant's income.

The plaintiff left the defendant's employ on October 15, 1998, after receiving a total of $55,926.56 in base salary for that year. The plaintiff did not receive a bonus in December, 1998.

The plaintiff commenced the present action in May, 1999, seeking damages for the defendant's failure to pay him a bonus in 1998. On June 9, 2000, the plaintiff filed a second amended complaint against the defendant, alleging that the defendant's failure to pay him a bonus in 1998 constituted a breach of the parties' employment contract. In count two, the plaintiff alleged that the defendant wrongfully had withheld wages in violation of General Statutes § 31-72 by virtue of its failure to pay the bonus.[1]

On October 23, 2000, the court, *Corradino, J.*, granted the defendant's motion to strike the second count of the plaintiff's complaint. The plaintiff unsuccessfully attempted to amend his complaint to include a statutory claim for wrongful withholding of wages. The parties tried the plaintiff's sole remaining count, breach of contract, to the court, *Eveleigh, J.* By memorandum of decision filed November 7, 2006, the court rendered judgment in favor of the plaintiff and awarded damages in the amount of $50,000 plus offer of judgment interest in the amount of $44,860.27. The defendant appealed,

---

[1] The plaintiff's third count asserted a claim to the 1998 bonus under a theory of promissory estoppel. On August 14, 2006, the plaintiff withdrew this count.

and the plaintiff cross appealed. Additional facts will be set forth as necessary.

## DEFENDANT'S APPEAL

### I

The defendant first claims that the parties' written employment contract set forth the parties' entire agreement, and, therefore, the court, *Eveleigh, J.*, improperly supplemented the writing.[2] Specifically, the defendant argues that it was not obligated by the employment contract to pay the plaintiff a bonus in 1998. We disagree.

With respect to the plaintiff's compensation, the written agreement of the parties states that "[a]nnual compensation shall be subject to review by the Board of Directors of [the defendant] on the anniversary of employment of [t]he Associate" and that compensation shall be based on various criteria. The defendant argues that the term "annual," as used in the written agreement, qualifies and limits the term "compensation" to include only the plaintiff's base salary and to exclude year-end bonuses. We are not persuaded.

Analysis of the defendant's claim requires us to construe the language of the written contract to discern whether the writing incorporated the entire agreement of the parties. "[W]hen the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was

---

[2] We note that the defendant does not challenge the court's conclusions with respect to the amount of the compensation or the amount of the damages awarded. We therefore limit our discussion to the issue of whether the employment contract provided for the payment of a prorated bonus to the plaintiff in 1998.

reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." (Internal quotation marks omitted.) *TIE Communications, Inc.* v. *Kopp*, 218 Conn. 281, 288, 589 A.2d 329 (1991). If the writing is ambiguous or does not set forth the entire agreement, however, the court may look to parol evidence to explain the ambiguity or add a missing term. Id., 288–89.

"The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 743–44, 945 A.2d 936 (2008).

We begin our examination of the parties' written agreement by noting that the plain and ordinary meaning of the term "compensation," standing alone, is not

limited to salary. See Webster's Third New International Dictionary (defining compensation as "payment for . . . service rendered" and bonus as "money or an equivalent given in addition to the *usual* compensation" [emphasis added]); Black's Law Dictionary (7th Ed. 1999) (compensation includes wages, profit sharing, commissions, bonuses and other benefits); Ballentine's Law Dictionary (3d Ed. 1969) (defining compensation as "a remuneration for services, whether in the form of a fixed salary, fees, commissions or perquisites of whatever character"). The ordinary meaning of the phrase "annual compensation" therefore includes salary, commissions, bonuses and other benefits paid and received over the period of one year. See, e.g., *Cosgrove* v. *Waterbury*, 286 Conn. 759, 764 n.7, 945 A.2d 932 (2008) ("annual compensation" includes annual longevity payment); *O'Connor* v. *Waterbury*, supra, 286 Conn. 745 n.11 (same).

We now turn to the language of the written agreement. The writing sets forth only the timing and bases for *calculating* the amount of the plaintiff's annual compensation. The written agreement, however, contains no expression of the parties' intent as to the timing and form (i.e., salary or bonus) of the payment of his total compensation for the year. Furthermore, the written agreement is silent as to the amount of the plaintiff's total compensation.[3] Because these terms are essential to an employment contract; see *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 628, 760

[3] The defendant argues that because the plaintiff's "annual compensation" was reviewable in April and bonuses were paid in December, the written agreement clearly and unambiguously contemplated that "annual compensation" included only the plaintiff's salary. This argument merely reveals the defendant's subjective perception of the meaning of that term. The written agreement does not provide that bonuses were paid only in December. Accordingly, the intent of the parties, as to the form of the plaintiff's "annual compensation," is not clear from the face of the written agreement, and both the parties and the court properly searched beyond the four corners of the writing to ascertain the meaning of that term.

A.2d 969 (2000); the court properly looked to parol evidence to determine the amount of compensation to which the plaintiff was entitled in 1998 and whether he was entitled to receive part of that compensation in the form of a bonus. The use of such evidence did not vary or contradict the terms set forth in the written agreement and therefore was proper. See *TIE Communications, Inc.* v. *Kopp*, supra, 218 Conn. 288–89.[4]

## II

The defendant next claims that in construing the language of the parties' written agreement, the court, *Eveleigh, J.*, misinterpreted a stipulation between the parties. Specifically, it argues that the court improperly found that the parties had stipulated that the meaning of the term "annual compensation," as used in the contract, included both salary and bonus. The defendant further contends that as a result of the improper reading of the stipulation, the judgment should be reversed. We disagree that the court made such a finding and conclude, therefore, that this claim is without merit.

The following additional facts are relevant to the defendant's claim. On August 9, 2006, the parties submitted to the court a stipulation of facts, paragraph

---

[4] "By implication, [parol] evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in [a] writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud." (Internal quotation marks omitted.) *TIE Communications, Inc.* v. *Kopp*, supra, 218 Conn. 288–89.

In its memorandum of decision, the court observed that "[p]arol evidence, including relevant statements and the conduct of the parties, are accordingly admissible, *whether to resolve an ambiguity or to supplement the writing.*" (Emphasis added.) We note that such evidence also may have been admitted in the present case to prove a collateral oral agreement that did not vary the terms of the writing. (See discussion in part III regarding Reardon's promise to pay the plaintiff's bonus in 1998.) In any case, we conclude that the court properly admitted parol evidence.

ten of which states: "A year end bonus is a form of compensation." The court's memorandum of decision states that the parties "stipulated that the language used in the contract for the term 'compensation' includes both salary and the year-end bonus."

The stipulation clearly stated that " '[a] year end bonus is a form of compensation." As with other contract language, "[a written] stipulation . . . must be construed according to the intention of the parties as expressed in the language used in the document itself . . . ." (Internal quotation marks omitted.) *Rosenfield* v. *Metals Selling Corp.*, 229 Conn. 771, 780, 643 A.2d 1253 (1994). When the language of a stipulation is clear, its interpretation presents a question of law. See id.; see also *Polter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 260, 694 A.2d 1319 (1997).

The defendant's claim also requires us to construe the court's memorandum of decision. "The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 135, 946 A.2d 230 (2008).

Our reading of the court's memorandum of decision, as well as the entire stipulation, indicates that the court, in substance, did not construe the stipulation in the manner that the defendant claims. On the basis of the stipulation, the court found that the term "compensation" included both salary and the year-end bonus. It further found that the written agreement did not state whether payment of compensation would be in fixed

periodic payments, an end of year lump sum or a combination of both methods of payment. Furthermore, as found by the court, the written agreement was silent as to whether an employee was required to be employed with the defendant at the end of the calendar year to receive full compensation. We do not read the court's decision, however, in the manner advanced by the defendant. Specifically, the court did not find that the term "annual compensation" included both salary and the year-end bonus solely on the basis of the stipulation.

Our reading of the judgment as a whole indicates that the court viewed the stipulation merely as an acknowledgment that the plain meaning of the term "compensation" includes both salary and bonuses, but that the contract was silent as to whether the plaintiff was entitled to either, or both, forms of compensation as part of his "annual compensation." The court correctly observed that "[t]he contract does not state whether . . . the compensation will be paid by fixed periodic payments, a lump sum year-end payment or both." In light of our discussion in part I, we conclude that the court's interpretation of the stipulation was correct in that neither the written agreement nor the stipulation set forth whether the plaintiff was entitled to a prorated bonus in 1998 as part of his "annual compensation" for that year.

### III

The defendant's third claim is that even if the court properly construed the parties' written stipulation and the employment contract, the court improperly found that the defendant had agreed to pay the plaintiff a prorated bonus in 1998. In support of its claim, the defendant argues that (1) there was no evidence of such an agreement and (2) any evidence of such an agreement was insufficient because (a) statements made during the hiring process by Reardon regarding

the payment of bonuses were too indefinite to bind the defendant and (b) any such statements made subsequent to the execution of the written agreement merely were gratuitous. We are not persuaded.

The court found that during the hiring process, Reardon had explained to the plaintiff that the defendant customarily paid its associates substantial bonuses in December of each year but kept associate salaries low to maintain enough working capital to fund cases. Upon receiving an offer of employment from the defendant, the plaintiff attempted to negotiate a $5000 increase in his initial salary. The defendant rejected the plaintiff's request for a higher starting salary but assured him that if he did not receive a $5000 bonus, "he would not be doing well." The plaintiff, in fact, received $12,000 in the form of a bonus after nine months of employment with the defendant.

Sometime in 1995, the plaintiff and Reardon had a conversation in which Reardon expressed his displeasure with former associates who had left their employment with the defendant shortly after receiving an annual bonus. The plaintiff assured Reardon that when the time came for him to leave, he would not wait to receive a bonus before resigning. Reardon assured the plaintiff that he would receive an appropriate bonus if and when the time came for him to leave the firm if that departure came before he had received a bonus for that year.

In August, 1998, a dispute arose between the plaintiff and Reardon over publicity that the plaintiff had received as the result of his successful handling of a case. At that time, the plaintiff met with Reardon to discuss his separation from the defendant's employment. Following that meeting, the plaintiff began seeking employment with other law firms. He became skeptical, however, of the defendant's intention to pay

him a bonus if he left prior to December 15, 1998, and sought reassurance from Reardon that the defendant would pay him a bonus. Reardon responded: "You know this has been a very successful year for the firm, and for you, and that you're going to get a bonus that fairly reflects that."

As we observed in part I, the parties' written contract was not a complete manifestation of their agreement. When a writing, on its face, does not set forth the entire agreement of the parties, the court may look to parol evidence to add missing terms. *TIE Communications, Inc.* v. *Kopp*, supra, 218 Conn. 288–89. In such circumstances, the parties' intent is a question of fact, and the trial court examines the evidence adduced at trial to determine that intent. See *Rund* v. *Melillo*, 63 Conn. App. 216, 221, 772 A.2d 774 (2001). The factual determination of the parties' intent "is to be garnered in light of the situation of the parties and the circumstances surrounding the contract, along with the primary purpose of the contract." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 440, 927 A.2d 843 (2007).

"Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Hill* v. *Raffone*, 103 Conn. App. 737, 742–43, 930 A.2d 788 (2007). "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation

marks omitted.) *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 66, 940 A.2d 878 (2008).

Our review of the record reveals adequate support for the court's findings in the exhibits submitted at trial, the stipulation of facts between the parties and the plaintiff's testimony, which the court credited. In light of the situation of the parties at the time, the court reasonably inferred from the discussions between the plaintiff and Reardon that the February, 1993 agreement contemplated both a salary and a bonus as part of the plaintiff's "annual compensation." Likewise, Reardon's subsequent assurances on behalf of the defendant evinced the defendant's intent that the bonus portion of the "annual compensation" would be prorated.[5]

Furthermore, the evidence demonstrates that the defendant's promise of a substantial yearly bonus was more than a mere gratuity. That promise was supported by consideration in the form of the plaintiff's acceptance of a lower salary. See 2 A. Corbin, Contracts (Rev. Ed. 1995) § 6.2, p. 214 n.4 (promise to pay bonus may be part of original employment contract when such promise supported by same consideration given for employer's promise to employ and pay salary). Thus, the defendant's reliance on *Christensen* v. *Bic Corp.*, 18 Conn. App. 451, 558 A.2d 273 (1989), is misplaced. Unlike the plaintiff in *Christensen*, the plaintiff in this

---

[5] The defendant argues that the evidence demonstrated that bonuses were paid only in December to individuals employed by the defendant at the time the bonuses were issued and that the court, therefore, drew the wrong inference from the testimony. Our task, however, is not to determine whether the court could have drawn a different conclusion, but whether the conclusion reached was a reasonable one in light of the evidence adduced. See *Barber* v. *Skip Barber Racing School, LLC*, supra, 106 Conn. App. 66. Although the defendant's past interactions with other associates were indicative of whether the defendant intended to prorate bonuses, the court was free to reject that evidence. See *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 17, 901 A.2d 649 (2006); *Mierzejewski* v. *Brownell*, 102 Conn. App. 413, 422, 925 A.2d 1126, cert. denied, 284 Conn. 917, 931 A.2d 936 (2007).

case testified that the defendant had promised him that he was entitled to a bonus. See id., 455. Accordingly, the court properly found the existence of an express contract to pay both a salary and a bonus on the basis of mutual promises and relied on custom and usage only to resolve the ambiguity in the written agreement as to the form in which the compensation was to be paid.

The fact that the parties were indefinite as to the amount of the bonus does not render the promise unenforceable. "Under the modern law of contract, if the parties so intend, they may reach a binding agreement even if some of the terms of that agreement are still indefinite." *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 844, 779 A.2d 174 (2001); see *Small Business Transportation, Inc.* v. *ABC Stores, LLC*, 96 Conn. App. 14, 19, 899 A.2d 73 (2006). The court found that the defendant had promised a bonus of at least $5000 if the plaintiff performed well during his first year and that the plaintiff, in fact, received a $12,000 bonus that year. The court further found that the plaintiff had received bonuses in increasing amounts from 1993 through 1997, which reflected "the outstanding performance [that] the plaintiff displayed in many cases." We conclude on the basis of these facts that the defendant's promise to pay a "substantial" bonus was not too indefinite to be enforceable. Accordingly, the court's conclusion, that "the defendant had agreed by either words or deeds, pursuant to the compensation clause in the contract . . . to pay a bonus to the plaintiff for that portion of 1998 that the plaintiff was employed by the [defendant]," was not clearly erroneous.

IV

The defendant's final claim is that the court, *Eveleigh, J.*, improperly awarded offer of judgment interest pursuant to General Statutes (Rev. to 1999) § 52-192a[6]

---

[6] General Statutes (Rev. to 1999) § 52-192a provides in relevant part: "(a) After commencement of any civil action based upon contract or seeking

because it had submitted to the plaintiff a conditional acceptance of his offer of judgment. In support of its claim, the defendant invites this court to carve an exception to the mandatory provisions of § 52-192a. It argues that such an exception is merited because its conditional acceptance of the plaintiff's offer of judgment furthered the statute's purpose of promoting settlement and conserving judicial resources. We decline the invitation.

Our resolution of the defendant's claim turns on the following additional facts. On August 9, 2000, the plaintiff filed with the court an offer of judgment in the amount of $25,000. The defendant concedes that it never filed an acceptance of the plaintiff's offer of judgment with the court. It alleges, however, that it had communicated to the plaintiff its timely "acceptance" of the plaintiff's offer on the condition that the parties' settlement remain confidential and that the plaintiff rejected the defendant's condition.[7]

---

the recovery of money damages, whether or not other relief is sought, the plaintiff may . . . file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. . . . Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ."

[7] The defendant's allegation was made known to the trial court for the first time in a postjudgment motion to set aside the verdict filed November 21, 2006.

In rejecting the defendant's claim, we take note of a basic principle of contract law. "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." 1 Restatement (Second), Contracts § 59 (1981); see also *Cavallo* v. *Lewis*, 1 Conn. App. 519, 520, 473 A.2d 338 (1984) (qualification of or departure from terms of offer invalidates offer unless offeror agrees to qualification or departure). Accordingly, the defendant's purported "acceptance" was not, in fact, an acceptance but a counteroffer, which the plaintiff apparently rejected.

Moreover, the defendant's argument ignores both the language of § 52-192a and "the punitive aspect of the statute that effectuates the underlying purpose of the statute and provides the impetus to settle cases." (Internal quotation marks omitted.) *Accettullo* v. *Worcester Ins. Co.*, 256 Conn. 667, 672, 775 A.2d 943 (2001). The goals of judicial economy and settlement of disputes are not furthered, and more likely are hindered, when, as here, a defendant fails to "file with the clerk of the court a written acceptance of the offer of judgment" and instead waits until the court renders an unfavorable judgment before informing the court that the parties allegedly had reached a settlement six years earlier. For these reasons, we conclude that the court properly awarded offer of judgment interest in accordance with § 52-192a.

## PLAINTIFF'S CROSS APPEAL

## V

On cross appeal, the plaintiff claims that the court, *Corradino, J.*, improperly overruled his objection to the defendant's request to revise the second count of

his third amended complaint,[8] thus eliminating the claim for wrongful withholding of wages pursuant to § 31-72. Specifically, he argues that the court improperly concluded that the bonus portion of his compensation, as alleged in his complaint, did not fall within the definition of wages, as that term is used in General Statutes § 31-71a (3). The defendant argues that the plaintiff waived this claim by repleading substantially the same allegations in his third amended complaint as he had alleged in his second amended complaint. We are not persuaded by the defendant's waiver argument, and we agree with the plaintiff on the merits of his claim.

On June 9, 2000, the plaintiff filed his second amended complaint. In count two of that complaint, the plaintiff alleged that by virtue of its failure to pay him a bonus in 1998, the defendant wrongfully had withheld wages from him in violation of § 31-72.[9] On June 20, 2000, the

[8] The plaintiff also claims that the court improperly struck count two of his second amended complaint. Because the plaintiff repleaded the stricken count in his third amended complaint, we do not address whether the court properly struck that count from the second amended complaint. See *St. Denis* v. *de Toledo*, 90 Conn. App. 690, 693–94, 879 A.2d 503, cert. denied, 276 Conn. 907, 884 A.2d 1028 (2005).

[9] The relevant paragraphs of count two of the plaintiff's second amended complaint are as follows:

"6. When the [defendant] hired [the plaintiff], and on several occasions thereafter, Reardon explained to [the plaintiff] that the [defendant's] policy and practice was to pay to its lawyers, including Reardon, modest salaries in the course of the business year, in order to keep capital available for funding the [defendant's] cases, and to distribute substantial bonuses at year end, so that an associate lawyer's overall compensation would be commensurate with 'the market.'. . .

"8. Prior to [the plaintiff's promotion to director in 1995], Reardon and [the plaintiff] had several discussions regarding it, in the course of which Reardon restated the [defendant's] policy and practice concerning salaries and bonuses; and represented that the plaintiff's base salary would be raised to $60,000 per year; and that [the plaintiff] would be paid a bonus at the conclusion of each year during which he was employed. . . .

"10. In the three years that [the plaintiff] served as a [d]irector, he received year end bonuses of $40,000.00 (1995), $42,500.00 (1996) and $60,000 (1997).

"11. Reardon represented to [the plaintiff] that his 1997 bonus was approximately 15 [percent] of the [defendant's] net income for that year. . . .

defendant filed a motion to strike count two of the plaintiff's second amended complaint.

On October 23, 2000, the court, *Corradino, J.*, granted the defendant's motion to strike the plaintiff's second count. In its memorandum of decision, the court acknowledged that under certain circumstances, a bonus may be considered wages under § 31-71a (3). The court emphasized that such circumstances may exist when a bonus is "based on individual production"; see *Cook* v. *Alexander & Alexander of Connecticut, Inc.*, 40 Conn. Sup. 246, 488 A.2d 1295 (1985); when "a connection [existed] between the additional work performed and the promise of a bonus"; *Wuerth* v. *Schott Electronics, Inc.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-91-036406-S (March 13, 1992) (7 C.S.C.R. 456); and when "the bonus was promised if [the plaintiff] accomplished certain objectives of the employer." See *Pelton* v. *Olin Corp.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-88-0092063-S (July 30, 1991) (6 C.S.C.R. 771). The court determined, however, that the bonus in the

"14. In August of 1998, [the plaintiff] voluntarily determined to leave the [defendant's employment] and notified the [defendant], through Reardon, of his intention; and Reardon and [the plaintiff] thereafter entered into discussions concerning [the plaintiff's] separation from the [defendant's employment].

"15. In the course of these discussions, Reardon, acting on behalf of the [defendant], and [the plaintiff] agreed, among other things that: . . .

"d. [The plaintiff's] employment by the [defendant] would terminate when [the plaintiff] succeeded in obtaining [employment with another firm] or on October 1, 1998, which ever occurred sooner;

"e. The [defendant] would continue to pay [the plaintiff] his regular salary through his date of termination, and would pay him a bonus that would 'reflect what a successful year [it] has been for [the plaintiff] and the [defendant].' . . .

"19. The [defendant] has breached its agreements with [the plaintiff] by failing to pay him a bonus that fairly reflects his contribution to the [defendant's] highly successful 1998 business year. . . .

"20. The [defendant] has wrongfully withheld the wages represented by the [plaintiff's] agreed bonus."

present case was not a wage, as defined by § 31-71a. The court reasoned that the allegations described the bonus as a reflection of the success of the firm and a percentage of the defendant's net income. The court then concluded that the bonus, as alleged in the second count of the second amended complaint, was an arbitrary figure determined by the success or lack of success of all members of the firm, "with no relation to any actual services performed by the plaintiff."

The plaintiff thereafter repleaded the second count in his third amended complaint filed November 22, 2000.[10]

[10] In addition to repeating the allegations stated in paragraphs one through nineteen of count two of the second amended complaint, count two of the third amended complaint stated:

"20. During each of [the plaintiff's] years with the [defendant], Reardon represented that bonuses for [a]ssociate [a]ttorneys and . . . [d]irectors were to be based primarily upon (1) each individual attorney's performance in the calendar year, including that attorney's fee generation and the quality of that attorney's work; and (2) the length of each attorney's association with the [defendant].

"21. Reardon represented that the [defendant's] overall success would also play a role in bonuses; in this regard, he stated that [a]ssociates and [d]irectors would benefit if the [defendant] was successful.

"22. [The plaintiff] received substantial bonuses after each of his years with the [defendant] because of his performance during those years; for example, Reardon represented that [the plaintiff's] first bonus in 1992 of [$12,000] was the largest that the [defendant] had ever paid to a first year [a]ssociate and [the plaintiff's] 1997 bonus was equal to his base salary.

"23. As of 1998, [the plaintiff] had been practicing with the [defendant] longer than any other attorney with the exception of Reardon.

"24. On information and belief, by August 1998, the [defendant] had experienced the most successful year in its history, with net income as of this date of approximately two million dollars, which constituted a significant increase in the [defendant's] income as compared with any prior year and approximately four times the [defendant's] net income for 1997. [T]his extraordinary income was derived primarily from four very large cases that were reduced to settlement . . . during that year.

"25. [The plaintiff] played a significant role in the [defendant's] success in these matters. Specifically, [the plaintiff] assisted Reardon in one of these cases; tried another to verdict and successfully defended an appeal from that verdict; and was substantially responsible for the results in the remaining two. In addition, [the plaintiff] materially contributed to the realization of income from other, smaller cases. Given the [defendant's] criteria for determining bonuses, [the plaintiff] had earned a substantial bonus by virtue of this performance in 1998 as aforesaid. . . .

The defendant filed a request to revise the plaintiff's third amended complaint, to which the plaintiff objected. On January 24, 2001, the court overruled the plaintiff's objection and "deleted" the second count of the plaintiff's third amended complaint. The court held that that count suffered from the same defect as the second count in the second amended complaint in that it "[did] not describe a bonus that accrued as a result of the plaintiff's personal efforts *alone* . . . ." (Emphasis added; internal quotation marks omitted.) The plaintiff subsequently filed a fourth amended complaint that reflected the court's order "deleting" the second count; see Practice Book § 10-37 (b); and proceeded to trial on his sole remaining claim for breach of contract.

A

We first address the defendant's argument that the plaintiff waived his claim because the allegations in his third amended complaint were not materially different from those in his second amended complaint. "After a court has granted a motion to strike, the plaintiff may either amend his pleading or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Citation omitted; internal quotation marks omitted.) *St. Denis* v. *de Toledo*, 90 Conn. App.

"32. [The plaintiff] would not have resigned from the firm . . . without Reardon's assurances that [the plaintiff] would receive the bonus that which he had earned by virtue of his performance during 1998.

"33. Reardon provided such assurances to [the plaintiff] prior to his final departure.

"34. As [the plaintiff] had earned this bonus by virtue of his performance . . . during the time prior to his departure, the [defendant] has wrongfully withheld the wages represented by [the plaintiff's] agreed bonus.

"35. As a result of the [defendant's] violation of [General Statutes] § 31-72, as aforesaid, [the plaintiff] is entitled to an award equal to twice the amount of his bonus, together with costs and attorney's fees."

690, 693–94, 879 A.2d 503, cert. denied, 276 Conn. 907, 884 A.2d 1028 (2005).

"When the allegations of an amended complaint appear to be the same in substance as those of an earlier complaint that was stricken, the defendant may challenge the amended complaint by filing a request to revise . . . or a second motion to strike. . . . The request to revise is a [request] for an order directing the opposing party to revise his pleading in the manner specified. . . . Although the request to revise may not ordinarily be used to substantively challenge a pleading, it may be used to delete otherwise improper allegations from a complaint. . . . The motion to strike, on the other hand, challenges the legal sufficiency of the pleading by testing whether the complaint states a cause of action on which relief can be granted. . . . Although the pleadings generally serve different functions, either may be used when the amended complaint merely restates the original cause of action that was previously stricken." (Citations omitted; internal quotation marks omitted.) *P & L Properties, Inc.* v. *Schnip Development Corp.*, 35 Conn. App. 46, 50, 643 A.2d 1302, cert. denied, 231 Conn. 913, 648 A.2d 155 (1994).

To determine whether the court properly deleted the second count of the plaintiff's third amended complaint, we compare the second amended complaint with the third amended complaint to determine whether the latter is materially different from the former. See *Bross* v. *Hillside Acres, Inc.*, 92 Conn. App. 773, 779, 887 A.2d 420 (2006). The interpretation of the pleadings is a question of law, subject to plenary review. Id., 778.

In this case, we decline to apply the waiver rule to the plaintiff's third amended complaint. At the outset, we note that the court's October 23, 2000 memorandum of decision on the defendant's initial motion to strike states no authority for the proposition that a bonus

must be triggered exclusively by the plaintiff's efforts in order to qualify as wages. The cases cited by the court require only "a connection" between the work performed and the bonus, not an exclusive connection.[11] A comparison of the second and third amended complaints reveals an obvious effort on the part of the plaintiff to allege additional facts that addressed the court's concern that the bonus had "no relation to any actual services performed by the plaintiff." The plaintiff's third amended complaint added several new allegations: that bonuses were to be based primarily on each individual attorney's performance in the calendar year, including that attorney's fee generation and the quality of that attorney's work; that from 1992 through 1997 he had received substantial bonuses because of his efforts; that he had played a significant role in the success of several cases that led to the defendant's extraordinary net income in 1997; and that Reardon had assured him that he would receive the bonus that he had earned by virtue of his performance during 1998.

We conclude, therefore, that the plaintiff alleged facts in his third amended complaint that were materially different from those in his second amended complaint. Accordingly, the plaintiff has not waived his claim with respect to his third amended complaint because he "appears to have made a good faith effort to file [an amended] complaint that states a cause of action." *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 75–76, 700 A.2d 655 (1997).

---

[11] We note that the plaintiff, in his objection to the defendant's request to revise, stated that he "amended his [c]omplaint to allege facts that support the application of [§ 31-71a (3)], under the cases cited by the [c]ourt." See *Cook* v. *Alexander & Alexander of Connecticut, Inc.*, supra, 40 Conn. Sup. 246; *Wuerth* v. *Schott Electronics, Inc.*, supra, Superior Court, Docket No. CV-91-036406-S; *Pelton* v. *Olin Corp.*, supra, Superior Court, Docket No. CV-88-0092063-S.

B

Having concluded that the plaintiff's claim properly is before us, we turn to the merits of his claim to determine whether, in fact, count two of his third amended complaint stated a cause of action under § 31-72.[12] The plaintiff claims that the court, in deleting count two of his third amended complaint, misconstrued the language of § 31-71a (3). We agree.

Before we address the plaintiff's claim, we set forth the applicable standard of review. Our assessment of the legal sufficiency of the plaintiff's third amended complaint requires us also to construe the language of § 31-71a (3). "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation

---

[12] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ."

marks omitted.) *Pritchard* v. *Pritchard*, 103 Conn. App. 276, 283, 928 A.2d 566 (2007).

In this case, the court determined that the plaintiff did not state a cause of action for wrongful withholding of wages under §§ 31-71a (3) and 31-72 because his allegations demonstrated that the 1998 bonus did not "[accrue] as a result of the plaintiff's personal efforts alone . . . ." In reaching this conclusion, the court observed that the complaint alleged that the amount of the bonus was dependent, at least in part, upon the overall success of the defendant. Therefore, the court reasoned, the bonus was not "compensation for labor or services rendered . . . ."

General Statutes § 31-71a (3) defines wages broadly as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or *other basis of calculation* . . . ." (Emphasis added.) Subsequent to the court's January 24, 2001 ruling, our Supreme Court observed in *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 159, 793 A.2d 1068 (2002), that "the statute lists certain non-exclusive factors that may assist in the computation of an employee's wage, [but] it fails to set forth a specific formula by which wages must be calculated or determined." The court later concluded that "the wage statutes, as a whole, do not provide substantive rights regarding *how* a wage is earned; rather, they provide remedial protections for those cases in which the employer-employee wage agreement is violated." (Emphasis in original.) Id., 162. Accordingly, whether compensation may be considered a wage and *the method for calculating the amount of wages are derived from the employee-employer agreement.* See id.

In his third amended complaint, the plaintiff alleged that the parties' employment contract provided for a

bonus "that fairly reflects his contribution to the [defendant's success]." The plaintiff further alleged that he contributed to the defendant's success by providing legal services to the defendant's clients and by generating fees. Given these circumstances, if proven, the bonus alleged by the plaintiff represented "compensation for [his] labor or services." It is not relevant whether the amount of that bonus was calculated on the basis of the number of hours worked, as a percentage of the defendant's net income or on some "other basis of calculation," which may or may not incorporate the efforts of others. The issue instead is whether the terms of the parties' employment agreement, as alleged in the complaint, vested in the plaintiff a right to compensation in the form of a bonus in exchange for the services that he had provided during the first ten months of 1998. Our Supreme Court has explained that § 31-71a (3) "merely requires that wages be paid as compensation to an employee for services rendered. *The determination of the proper amount to be tendered purposely is left vague by reference to 'or other basis of calculation' . . . .*" (Emphasis added.) *Mytych* v. *May Dept. Stores Co.*, supra, 260 Conn. 159. It has been stated expressly that statutes do not dictate the manner in which wages are calculated. Id., 161. Instead, courts are to focus on the agreement between the employer and employee. Id., 159. Given the remedial nature of this statute; see id.; the broad statutory definition and judicial interpretation of what constitutes wages,[13] coupled with the allegations contained in the second count of the complaint, we conclude that the plaintiff pleaded a valid cause of action for the wrongful withholding of wages. Under these facts and circumstances, namely, the agreement between the plaintiff and the defendant, the bonus could have been classified as wages for purposes

---

[13] As we noted previously, the trial court did not have the benefit of the *Mytych* decision when it issued its ruling.

of § 31-71a (3). Accordingly, we conclude that the court improperly overruled the plaintiff's objection to the defendant's request to revise count two of his third amended complaint because the plaintiff, in fact, had stated a cause of action under § 31-72 on which relief may be granted.

Our final task is to determine what relief to grant to the plaintiff on remand. The court has made the necessary factual findings to support its conclusion that the defendant withheld compensation that the plaintiff had earned by virtue of the parties' employment agreement. The court, however, did not address whether the defendant's breach of the parties' employment agreement was done arbitrarily, unreasonably or in bad faith. The plaintiff concedes that a finding of bad faith, arbitrariness or unreasonableness must precede a discretionary award of double damages pursuant to § 31-72.[14] The issues of breach and bad faith in this case are not so intertwined as to require the relitigation of the plaintiff's breach of contract cause of action. See *Harewood* v. *Carter*, 63 Conn. App. 199, 207, 772 A.2d 764 (2001). Accordingly, we remand the case to the trial court for a hearing only as to the issue of whether the defendant's breach of the parties' employment agreement was done arbitrarily, unreasonably or in bad faith. See General Statutes § 52-266.

The judgment is reversed as to the striking of count two of the plaintiff's third revised complaint and the case is remanded for further proceedings consistent

[14] Our Supreme Court recently observed that "[a]lthough [General Statutes] § 31-72 does not set forth a standard by which to determine whether double damages should be awarded in particular cases, it is well established . . . that it is appropriate for a plaintiff to recover attorney's fees, and double damages under [§ 31-72], only when the trial court has found that the defendant acted with bad faith, arbitrariness or unreasonableness." (Internal quotation marks omitted.) *State* v. *Lynch*, 287 Conn. 464, 475 n.10, 948 A.2d 1026 (2008).

with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.